**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROTHSCHILD BROADCAST<br>DISTRIBUTION SYSTEMS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>MUVI LLC,<br><br>        Defendant. | Civil Action No. 1:20-cv-00672-MN |

**OPENING BRIEF IN SUPPORT OF
<u>MUVI LLC'S MOTION TO DISMISS COMPLAINT</u>**

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
kdorsney@morrisjames.com


OF COUNSEL:

Andrew Berks
Max Moskowitz
OSTROLENK FABER LLP
845 Third Ave 8th Fl
New York, NY 10022
212-596-0500
aberks@ostrolenk.com

*Attorneys for Defendant Muvi LLC*


Dated: September 8, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I.  INTRODUCTION ............................................................................................................. 1

    a.  Statement of Facts ........................................................................................................ 1

    b.  The '221 Patent ........................................................................................................... 2

    c.  Summary of the Argument ........................................................................................... 3

II.  ARGUMENT..................................................................................................................... 5

    a.  Legal Standards ........................................................................................................... 5

    b.  The '221 Patent Claims Are Not Directed to Patent-Eligible Subject Matter.................. 8

    c.  *Alice* Step One: The '221 Patent Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content ................................................................................... 8

       i.  The Recited Steps Use Functional Language to Describe a Common Business Practice and are Not Directed to a Concrete Result ................................................................. 12

    d.  *Alice* Step Two: The Recited Limitations Do Not Transform the Claims into Significantly More than the Abstract Idea .................................................................... 13

    e.  The Recited Steps of Claim 7 are Confusing, Illogical, and Indefinite ......................... 15

    f.  The Complaint Fails to Plead a Plausible Claim for Patent Infringement ..................... 17

III.  CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

C̲A̲S̲E̲S̲

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) ........................ 13

*Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), ................................. 4, 8, 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ..................................................... 6

*Blue Spike LLC v. Comcast Cable Comm'ns, LLC*, No. 19-159-LPS- CJB, 2019 U.S. Dist. LEXIS 152005, at *2 (D. Del. Sept. 6, 2019) ................................................................. 6, 7

*BMC Research, Inc. v. Paymentech, LP.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ....................... 19

*British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 305 (D. Del. 2019)...... 8, 13

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ............................. 9

*Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019)......................... 8, 14

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 761, 765 (E.D. Tex. 2014) ................................................................................................. 10

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ..................................................................... 6

*Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) ............. 15

*Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981),....................................................... 12

*Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016).............................. 9, 15

*Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019)..................................... 19

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)..................................... 13

*Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 735 (D. Del. 2018).................................. 20

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1317 (Fed. Cir. 2015) ................ 18

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ............................................ 6

*In re Packard*, 751 F.3d 1307, 1314 (Fed. Cir. 2014) ............................................................... 16

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 725 (N.D. Ill. 2016).............................................................................................................. 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012) ................ 8, 10

iii

*McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) .............. 12

*Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) ............................................................................................ 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014). ....... 18

*Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008) ............................... 18

*NexusCard, Inc. v. The Kroger Co.*, 173 F. Supp. 3d 462, 467 (E.D. Tex 2016) ........................ 13

*Personalized Media Comm., LLC v. Int'l Trade Com'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ...... 18

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ................................................... 6

*Pi-Net Int'l, Inc. v. JPMorgan Chase & Co.*, 42 F. Supp. 3d 579, 586–87 (D. Del. 2014) .......... 18

*RainDance Techs., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) ....................................................................................................... 6, 7

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ........................................ 7

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) .............. 19

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ...................... 12

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) ................................. 7, 10

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ..... 5

*Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *9 (D. Del. Sept. 30, 2015). ................................................................................................. 15

*Warner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17 (1997). ......................................... 19

*WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019) ...................................... 7

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 686 (Fed. Cir. 1990) ................................................................................................................................. 19

## STATUTES

35 U.S.C. § 101 ............................................................................................................. passim

35 U.S.C. § 112 p2 ................................................................................................................. 18

## OTHER AUTHORITIES

MPEP 2173.05(e) .................................................................................................................... 16

## RULES

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 1, 6

Defendant Muvi LLC ("Muvi") hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint (D.I. 1) filed by Plaintiff Rothschild Broadcast Distribution Systems, LLC ("Rothschild") alleging infringement of U.S. Patent No. 8,856,221 ("the '221 patent"), issued October 7, 2014, for failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

### a. Statement of Facts

Muvi LLC is a Delaware limited liability company that provides a tool kit and development environment for app development primarily intended for video and audio consumption, for the mobile and video device space (Roku, Tivo, etc) and for web browsers. Muvi's products are exclusively marketed and sold business to business (B2B). Muvi does not provide video content directly to consumers.

Rothschild, a Texas limited liability company, has asserted the '221 patent (D.I. 1, Ex. A) against Muvi as well as other defendants in this District. Rothschild has asserted this patent approximately 67 times in various district courts, each time settling before any court could reach a determination on the merits (except for a few of these cases filed in the past six months that are still pending). None of these cases has proceeded to a final disposition. In several of the cases, defendants filed motions to dismiss for failure to state a claim pursuant under 35 U.S.C. § 101, and Rothschild settled shortly thereafter.[1]

In the present case, Rothschild accuses the "Muvi streaming platform" (D.I. 1 ¶17) of allegedly "practic[ing] a method of storing (e.g., cloud storage) media content (e.g. and recorded music) and delivering requested media content to a consumer device." *Id.* 1 ¶18.

---

[1] *See, e.g., Rothschild Broad. Distrib. Sys., LLC v. Project Panther, LLC, No.* 1:20-cv-00396 (D. Del.) filed Mar. 19, 2020; *Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*, No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015); and *Rothschild Broad. Distrib. Sys., LLC v. UStream, Inc.*, 6:15-cv-00230-RWS-JDL (E.D. Tex. filed Mar. 19, 2015).

The complaint alleges that Muvi infringes one or more claims of the '221 patent including at least claim 7. *Id.* 1 ¶15. The complaint parrots the language of the claims by alleging that the accused product "necessarily includes a receiver configured to receive a request message including data indicating requested media content (e.g., the Product must have infrastructure to receive a request to store recorded media content or to stream recorded media content on a smartphone; additionally, the request message must contain data that identifies the content to be stored or streamed)." *Id.* at ¶ 19. The Complaint includes a few screenshots from the Muvi website but does not indicate Rothschild purchased, operated, or evaluated the Muvi system. *Id.* In addition, the alleged infringements at ¶¶19–26 mix and match screen shots and discussion of the Muvi product, and the "Onyx" product, which is a different product from the Muvi development app. Onyx is a rapid development tool that models the appearance of an app for mobile and video devices without the need to code the app or to compile a working app.

### b. The '221 Patent

The '221 patent relates generally to the field of "on-demand storage and delivery of media content." '221 patent, col. 1, lines 26-27. The patent's background section identifies two possible concerns about streaming services, both of which are non-technological in nature. First, the specification notes that on-demand streaming services may charge a single flat-rate monthly subscription fee, regardless of the amount of content viewed *Id.* at col. 1, lines 47-66. The patent also identifies a possible scenario where consumers using a streaming service may request a video that is not yet available, but then may lose interest in watching the video by the time that the service begins hosting that video for steaming. *Id.* at col. 2, lines 3-12.

The summary of the invention section of the '221 patent specification describes the "invention" as "provid[ing] a method and system for on-demand storage and delivery of media content." *Id.* at col. 2, lines 20-22. The patent discloses a "storage and streaming system" that

includes one or more "consumer devices" and a "network" of servers that can be in a "cloud-computing environment." *Id.* at col. 3, lines 43-55. According to the patent, the "consumer device 12" may communicate with "network 18 using communication protocols known in the art" and may include a processor "for executing computer program instructions stored in memory 26, as is well known in the art." *Id.* at col. 3, lines 47-52 & lines 66-67. A "broadcast server" may store "media content existence" information that "may indicate whether the media content exist[s], e.g., media content [is] not found because user input the wrong movie title." *Id.* at col. 4, lines 23-41. A "remote server" may store media content "for a specific length of time." *Id.* at col. 4, lines 42-55.

The specification of the '221 patent describes the consumer device and servers as including conventional, generic components, i.e., processor, transmitters, receivers, and memory. The patent describes no specific configuration for the servers and, in fact, provides no information at all aside from high-level, generic functionality of the components. The patent concludes by explaining that the "invention" can be applied to any computer system or network, in any combination of hardware or software, as follows (*id.* at col. 10, lines 12-27):

The '221 patent includes 13 claims, of which claims 1 and 7 are independent.

The '221 Patent reflects no invention of any new software or hardware. Instead, the claimed systems and methods operate with well-known computer components. The patent states the purported invention can be put into practice using "[a]ny kind of computing system," and "[a] typical combination of hardware and software could be a specialized or general purpose computer system." *Id.* 10:12-19.

### c. Summary of the Argument

1. First, the '221 patent is invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), and its progeny. The patent claims are directed to the

abstract idea of enabling subscribers to request available media content or have it stored for a specified period of time. The claims of the '221 patent are similar to claims in numerous other patents that have been held patent-ineligible by the Federal Circuit and this Court. Indeed, the '221 patent itself includes an admission that the purported invention is based on generic and conventional computing techniques and components. The claim limitations add nothing that transforms the claims into significantly more than the abstract idea to which they are directed.

2. Regarding step one of the *Alice* case, the claims are directed to an idea that consistently has been recognized as abstract. Representative claim 7 recites a method for handling a subscriber's request to a processor to send "media content" or store it for a specified amount of time; if the media content exists and is available, it is delivered to the subscriber unless there is a restriction preventing the subscriber from receiving it. In numerous decisions, the Federal Circuit and this Court have held that claims directed to managing data rights, providing selective or customized access to data, or enabling subscriptions for data storage, are directed to abstract, patent-ineligible ideas. Claims for "storing media content and delivering requested media content to a consumer device," as recited in the '221 patent, are similarly ineligible patent subject matter. '221 patent col. 11, lines 43-44. In addition, claims 1 and 7 are not directed to a concrete result and are therefore abstract

3. With respect to *Alice* step two, the elements of the '221 patent claims, either individually or in combination, do not transform the claims into significantly more than the abstract idea of selectively delivering or storing media content based upon a subscriber's request. There is nothing unconventional about receiving requests from subscribers, parsing requests, and delivering requested content if the subscriber is entitled to it or storing the content. As other defendants have raised in Rule 12(b)(6) motions to dismiss in prior lawsuits relating to the

same '221 patent, these functions are common business practices, specifically analogous to the tasks performed at video rental stores where store clerks received a customer request for videos and check if the customer's membership was up to date and if the videos were available. The '221 patent merely appropriates this business practice and "applies it to a computer" in a routine way. *See Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (invalidating a "do it on a computer" patent). In fact, the patent specification discloses that the "invention" can work on any computer system or on any combination of hardware and software.

4. Second, the claims of the '221 patent are confusing and illogical and are therefore indefinite.

5. Third, the allegations of Rothschild's Complaint (D.I. 1) are insufficient to plead a plausible claim for patent infringement regarding the Muvi development environment. The Complaint fails to plead sufficient facts plausibly asserting that the claim limitation of a "processor [] further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device" is met by the accused Muvi system.

6. In summary, the claims of the '221 patent are invalid under 35 U.S.C. § 101 as a matter of law. In addition, the allegations of the Complaint are insufficient to plead a plausible claim for patent infringement. Therefore, the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## II.     ARGUMENT

### a.    Legal Standards

The standard of review is the two-part analysis applicable to motions made pursuant to Fed. R. Civ. P. 12(b)(6). *See Blue Spike LLC v. Comcast Cable Comm'ns, LLC*, No. 19-159-LPS-

CJB, 2019 U.S. Dist. LEXIS 152005, at *2 (D. Del. Sept. 6, 2019); *RainDance Techs., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the Court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

With regard to an allegation of direct infringement, a plaintiff needs to have pleaded facts that plausibly indicate that an accused instrumentality practices each of the limitations asserted in the relevant claims. *See Blue Spike*, 2019 U.S. Dist. LEXIS 152005, at *3; *RainDance Techs.*, 2016 WL 927143, at *2-3. If, after reading a complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of an asserted claim of a patent-in-suit, then it cannot be plausible that the accused infringer actually infringes that patent claim. *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (citing cases).

Patent eligibility is a question of law that may be resolved on the pleadings. As the Federal Circuit explained, patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019), *aff'd*, Nos. 2019-2240, 2019-2241, 2020 U.S. App. LEXIS 11396 (Fed. Cir. Apr. 10, 2020) (noting it is "well-settled" to determine patent eligibility at motion to dismiss stage and collecting cases).

Moreover, it is appropriate for a court to resolve patent eligibility before claim construction. As the Federal Circuit explained, "addressing section 101 at the outset of litigation will have a number of salutary effects," including conserving judicial resources and exposing "basic deficiencies" in a complaint before the parties expend excess time and money. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring) (internal quotation marks omitted). When, as here, the claims "disclose[] no more than an abstract idea garnished with accessories and there [i]s no reasonable construction that would bring [them] within the patentable subject matter," a court should resolve patent eligibility before claim construction. *Id.* at 719 (internal quotation marks omitted). Further, when it is clear even without claim construction that a patent does not contain details about how computer components are "'manipulated' or otherwise programmed to yield results . . . no formal claim construction is required." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 725 (N.D. Ill. 2016). To evaluate patent eligibility, a court first must determine whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("step one"). *Alice*, 573 U.S. at 217. For example, a claim is abstract when the language "is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved." *British Telecomms. PLC v.*

*IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 305 (D. Del. 2019). If the claim is directed to a patent-ineligible concept, the court then must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" that is significantly more than a claim to the abstract idea ("step two"). *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). An abstract idea itself, "no matter how beneficial," cannot serve as the inventive concept for step two. *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019).

### b. The '221 Patent Claims Are Not Directed to Patent-Eligible Subject Matter

The Supreme Court has strongly signaled that federal courts should root out patents unworthy of the limited monopoly conferred by the patent laws, including so- called business-method patents that purport to cover basic practices in the commercial marketplace. The patent in this case is directed to an abstract idea and contains no steps sufficient to confer patent eligibility.

The claims of the '221 patent are directed to the abstract idea of enabling subscribers to request available media content or have it stored for a specified period of time. The recited limitations do not recite anything unconventional that would amount to significantly more than the abstract idea itself. The specification confirms that the "invention" is directed to purely functional limitations, namely applying an abstract concept to a generic computer network.

### c. *Alice* Step One: The '221 Patent Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content

The Court's inquiry under 35 U.S.C. § 101 begins by "looking at the 'focus' of the claims, their 'character as a whole,'" to assess whether they are directed to an abstract idea. *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). For this step, "the specification must always yield to the claim language" when identifying "the true focus of a claim." *ChargePoint,*

*Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

Independent claims 1 and 7, which are representative of the claimed invention, recite the following steps:

- Receiving messages from consumers requesting content;

- Confirming that the consumer is using a registered consumer device;

- Determining whether the consumer has sent a request for immediate delivery or for storage;

- Determining whether the requested content is available for either immediate delivery or storage;

- Checking whether there are restrictions on delivery to the consumer device; and

- Delivering the content if available.

These steps describe, at a high level of generality, a process for receiving a consumer request for an item, reviewing the request to determine whether it contains certain information, and delivering the requested item. This claims nothing more than the ubiquitous business practice of checking one's inventory to see if an item requested by a customer is in stock. None of this is unique to online media; indeed, these familiar practices are integral to every business that sells goods, whether digital or physical. *See, e.g.*, *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 761, 765 (E.D. Tex. 2014) (concept of "selling goods from inventory" is an abstract business idea).

The generic inventory-checking process claimed by Plaintiff is at least as abstract, if not more so than claims that have been held invalid in other cases. *See, e.g.*, *Ultramercial*, 772 F.3d at 712 (finding abstract and invalidating a patent claiming "a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no

cost in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content").

Tellingly, in this case, all the steps of the '221 Patent[2] could be performed by a video rental store[3] clerk:

| Claim 7 Language | As Performed by a Human |
|---|---|
| 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: | A clerk at a video rental store: |
| receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | Accepts requests from customers for videos, wherein the requests contain certain information including the title of the video, how long the customer wants to retain it, at the same time as an identifier for the customer (*e.g.*, the video rental store's membership card).[4] |
| determining whether the consumer device identifier corresponds to a registered consumer device; and | Checks the customer's membership card against a list of approved members without any late fees. |
| if it is determined that the consumer device identifier corresponds to the registered consumer device, then:  determining, whether the request message is one of a storage request message and a content request message; and | If the clerk determines that the customer is on the list of approved members, then the clerk will determine whether the customer is asking for a video that is available for rental now or to back-order a video that isn't on the shelves. |

[2] For simplicity, only the method claim is analyzed here, but the analysis for the corresponding system claim would yield the same result. Also, the corresponding system claim is linked to and falls with the method claim. To allow the system claim, while invalidating the method claim, would permit applicants to preempt abstract ideas by the mere use of patent-drafting conventions. *See Alice*, 134 S. Ct. at 2360 ("This Court has long warn[ed] . . . against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." (quoting *Mayo*, 132 S. Ct. at 1289) (quotations omitted)).

[3] Video rental stores were common retail establishments in the 1990's and 2000's, where libraries of video tapes were displayed that customers could rent for two or three days to view on a video tape player at home. This technology has now been supplanted by video streaming services.

[4] For the purposes of a Section 101 inquiry, checking to see whether a consumer is using a registered device (as the claim requires) is an idea at the same level of abstraction as checking to see whether a consumer has a membership.

| | |
|---|---|
| if the request message is the storage request message, then determining whether the requested media content is available for storage; and | If the customer wants to back-order a video, the clerk will check a list of videos from the company's warehouse to see if the video can be back-ordered. |
| if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | If the customer wants a video that is in stock, then the clerk will give the video to the customer for rental. |
| wherein the media data includes time data that indicates a length of time to store the requested media content; and | The clerk is able to receive information from customers about how long they would like the store to stock the video before returning it to the warehouse. |
| the first processor is further configured to determine whether the requested media content exists; and | The clerk checks the shelves of the store and the list of warehoused videos to see if the video rental store has the video anywhere. |
| if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | If the clerk sees that the video rental store has the video somewhere, the clerk will determine whether the video is available and whether there are any restrictions on the membership that would preclude the rental of the video to the customer (e.g., no restricted movies for members under 17; no rentals to customers who have not paid late fees). |

That a human being can perform all of the claim limitations confirms that the '221 claims are drawn to an abstract idea. *See, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (patent found abstract where "a skilled artisan could perform the steps mentally"). Accordingly, the claims of the '221 Patent are directed to an abstract idea—the idea of storing and delivering media content—and are not patentable.

Moreover, as set forth in its preamble, claim 7 is directed to "[a] method for storing media content and delivering requested media content to a consumer device." '221 patent, col. 11, lines 43-44. The patent's summary of the invention similarly characterizes "[t]he present

invention" as "advantageously provid[ing] a method and system for on-demand storage and delivery of media content." *Id.* at col. 2, lines 20-22.

### i. The Recited Steps Use Functional Language to Describe a Common Business Practice and are Not Directed to a Concrete Result

The Federal Circuit has held that claims directed to a desired result (a functional claim) without appropriate structure to obtain that result are abstract. A patent may issue "for the means or method of producing a certain result, or effect, and not for the result or effect produced." *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016), quoting *Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981), 101 S. Ct. 1048, 67 L. Ed. 2d 155. Courts should therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery. *McRO* at 1314, citing *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1336 (Fed. Cir. 2016).

The recited method of claim 7 recites generic, functional outcomes such as "receiving," "determining," and "delivering," but does not describe how to carry out these functions in a non-abstract way. The claim recites that if the consumer is authorized and the content is available, then the consumer can receive it or have it stored. Courts have rejected such functional claiming under § 101. *See British Telecomms.*, 381 F. Supp. 3d at 305-07.

Although inventions directed to improving *how to stream* media may be technological in nature, claims directed simply to *when to authorize media streaming* have been found to be patent ineligible as abstract. The Federal Circuit found that claims directed to streaming content on demand to a handheld wireless device was abstract because no particular mechanism for wireless streaming was disclosed, and the claim was "purely functional." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1268 (Fed. Cir. 2016). Finding the claim abstract, the Federal

Circuit determined that the patent disclosed no particular mechanism for wireless streaming to a handheld device and that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at 1269. Likewise, the claims of the '221 patent recite functional steps for storing and delivering media content but do not recite any "concrete embodiment" of that idea. *Id.*

Further, claims 1 and 7 are not directed to a concrete result and are therefore abstract. *NexusCard, Inc. v. The Kroger Co.*, 173 F. Supp. 3d 462, 467 (E.D. Tex 2016), aff'd (R. 36), 688 Fed. Appx. 916 (Fed. Cir. 2017). The final claim limitation of claims 1 and 7 requires a determination of whether there are restrictions associated with the requested media content that prevent the content from being delivered to the consumer device. Also, the limitation in claim 7 at 12:12-13 requires "*initiating* delivery of the requested media content to the consumer device" (emphasis added). There is no recitation in claims 1 or 7 that content is actually delivered to a consumer device. Thus, claims 1 and 7 are not directed to a concrete result and are abstract.

In short, the focus of the claims of the '221 patent is a system and method that provides selective access to content for subscribers or gives subscribers the option to store content for a specified amount of time. No technology is involved other than to perform conventional techniques using generic processors. In addition, claims 1 and 7 are not directed to a concrete result. Thus, the claims of the '221 patent are directed to a patent-ineligible abstract idea.

### d. *Alice* Step Two: The Recited Limitations Do Not Transform the Claims into Significantly More than the Abstract Idea

As the asserted claims are directed to an abstract idea, they are invalid unless they are found to embody an "inventive concept" that is "significantly more" than the abstract idea. *Alice*, 573 U.S. at 217-18. This is step two of the *Alice/Mayo* framework. Courts should consider the "elements of each claim both individually and as an ordered combination to determine whether

the additional elements transform the nature of the claim into a patent-eligible application. *Id.*, (internal quotes omitted). Here, the claims of the '221 patent are not significantly more than an abstract idea. There is no ordered combination or additional elements that embody an inventive concept.

The steps of "receiving" a request, "determining" whether the subscriber is registered, and "determining" whether the identified media content is available and permitted to be delivered or stored, merely follow the abstract idea itself. *See Citrix*, 363 F. Supp. 3d at 523 (holding that the abstract idea itself cannot serve as the inventive concept).

In the context of computer-implemented inventions, there is no inventive concept when "[n]othing in the claims, understood in light of the specification, requires anything other than [an] off-the-shelf, conventional [processor networked with generic computers]." *Elec. Power Grp.*, 830 F.3d at 1355; *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (holding that "already-available computers" will not save a claim under *Alice* step two); The '221 patent fails to claim patentable subject matter for this reason as well.

This Court has repeatedly invalidated patents that claim patent-ineligible subject matter and that purport to apply broadly to various computers, over varied networks, and across disparate fields of technology.[5] The language in the '221 patent closely resembles the broad language found in these patents.

Thus, nothing claimed or disclosed in the '221 patent transforms the abstract idea, to which the patent claims are directed, into patent-eligible subject matter. Therefore, the claims of the '221 patent are invalid, and the Court should dismiss Rothschild's Complaint for failure to

---

[5] *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019); . *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *9 (D. Del. Sept. 30, 2015); *TriPlay, Inc. v. WhatsApp Inc.*, No. CV 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018), *aff'd*, 771 F. App'x 492 (Fed. Cir. 2019).

state a claim.

### e. The Recited Steps of Claim 7 are Confusing, Illogical, and Indefinite

In assessing invalidity for lack of patentable subject matter, a court may evaluate a representative claim of the patent rather than reviewing each claim or each asserted claim. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352. Here, claim 7 taken as representative, because it is specifically cited in the complaint (D.I. 1, ¶15) and given the close relationship of independent claims 1 and 7 in the '221 patent. The court should find claim invalid as indefinite. Representative independent claim 7 is confusing and presents a flow of steps that do not make sense. See Fig. 1 that charts the steps of claim 7 with slight paraphrasing. As shown in Fig. 1, a request message including media data is received, then a consumer device is authenticated, then there is a determination of whether the request message is a storage request message or a content request message. If the request message is a content request message, delivery of the requested media content to the consumer device is initiated. If the request message is a storage request message, there is a determination of whether the requested media content is available for storage. Thus, there is a division of the flow at this stage between content request messages and storage request messages. The remaining steps of the claim are confusing and unclear.

The following step ("wherein the media data includes time data that indicates a length of time to *store* the requested media content"; emphasis added) appears to be related to the storage request branch.

The following two steps are joined by an "and" conjunction, implying that these steps are related. However, the next step then refers to "the first processor" (emphasis added in Fig. 1) without antecedent basis, which is unclear. Claim terms without an antecedent basis are indefinite because it would not be clear what element the limitation is referring to. MPEP 2173.05(e); *In re Packard*, 751 F.3d 1307, 1314 (Fed. Cir. 2014). Moreover, assuming this step

requires "a processor" to determine whether the requested media content exists, that makes no

sense following the storage request message path. The previous two steps determined whether

the content was available for storage and requiring a length of time to store the content. A

subsequent step of determining whether the content exists is illogical and does not flow from the

previous steps. An interpretation that "the first processor" step follows from the content request



Fig. 1. Claim 7 flowchart (paraphrased for brevity)

message path (dashed line in Fig. 1) conflicts with the "and" conjunction following the length of time to store the requested media content step.

The last step (if the media content exists, determining if it is available without restrictions for delivery) appears to be related to the content request message branch, but this also conflicts with the "and" conjunctions.

Claims that are illogical are indefinite and do not meet the requirements of 35 U.S.C. § 112 p2 (AIA § 112(b)). *See Net MoneyIN, Inc. v. VeriSign, Inc*., 545 F.3d 1359, 1366 (Fed. Cir. 2008) (claims that are illogical do not meet the definiteness requirement). Moreover, a "claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2 if its language, when read in light of the specification and prosecution history, fails to inform skilled artisans about the scope of the invention with reasonable certainty." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 796 F.3d 1312, 1317 (Fed. Cir. 2015), citing *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014).

The definiteness requirement is a question of law for the court. *Pi-Net Int'l, Inc. v. JPMorgan Chase & Co*., 42 F. Supp. 3d 579, 586–87 (D. Del. 2014), citing *Personalized Media Comm., LLC v. Int'l Trade Com'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). Accordingly, the Court should find claim 7 invalid as a matter of law and dismiss Rothschild's Complaint for failure to state a claim upon which relief can be granted for this reason too.

### f.  The Complaint Fails to Plead a Plausible Claim for Patent Infringement

The Court should also dismiss Rothschild's Complaint for failing to state a claim upon which relief can be granted because it does plead sufficient facts to support a plausible claim of infringement—whether direct or indirect infringement—regarding the accused Muvi development environment, at least because there is no allegation in the complaint for the last step

of claims 1 or 7, that a

> processor determines that the requested media content exists, the processor is further
> configured to determine whether the requested media content is available and whether
> there are restrictions associated with the requested media content that prevent the
> requested media content from being delivered to the consumer device.

This step is discussed in the complaint (D.I. 1 at ¶26) in vague terms without citation to any specific feature of the Muvi development environment. "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *BMC Research, Inc. v. Paymentech, LP.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007), citing *Warner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17 (1997). Moreover, "[t]o prove infringement, a patentee 'must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim.'" *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019), quoting *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). The patentee has the burden of proving infringement by a pre-ponderance of the evidence. *Id*. Since there is no colorable allegation of infringement of the last step of claims 1 or 7, there can be no finding of infringement. Further, where independent claims are not infringed, then dependent claims are not infringed. *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 686 (Fed. Cir. 1990).

## III.    CONCLUSION

For the foregoing reasons, Muvi respectfully requests that the Court dismiss Rothschild's Complaint in its entirety for failing to state a claim. The '221 patent is invalid for claiming patent-ineligible subject matter, and as indefinite. Accordingly, any amendment to the Complaint would be futile, and the Court should dismiss the Complaint with prejudice. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 735 (D. Del. 2018) (dismissing complaint with prejudice

due to patent subject-matter ineligibility). Alternatively, the Court should dismiss the Complaint because its allegations are insufficient to plead a plausible claim for infringement of the '221 patent.

Respectfully submitted,

Dated: September 8, 2020

_/s/ Kenneth L. Dorsney_

OF COUNSEL:

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
kdorsney@morrisjames.com

Andrew Berks
Max Moskowitz
OSTROLENK FABER LLP
845 Third Ave 8th Fl
New York, NY 10022
212-596-0500
aberks@ostrolenk.com
mmoskowitz@ostrolenk.com

_Attorneys for Defendant Muvi LLC_